FILED
U.S. DISTRICT COURT
DISTRICT OF KANSAS

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS  SEP 21  AM 10 :34

Carroll W. Lewis Jr. _____ )
                                      )
_____       )
                                      )
_____       )
(Enter above the full name of Plaintiff(s))  )
                                      )
vs.                                   )
                                      )
Sequel Youth and Family Services, LLC formerly  )
known as Camelot for Kids             )
Name                                  )
          1131 Eagletree Lane         )
Street and number                    )
                                      )
Huntsville    AL         35801        )
City       State       Zip Code       )

CLERK, U.S. DISTRICT COURT
          DEPUTY CLERK
    AT WICHITA, KS

Case Number: 11-CV-1287 -JTM- KMH

(To be assigned by Clerk)

(Enter above the full name and address of
Defendant in this action - list the name and address
of any additional Defendants on the back side of
this sheet.)

**EMPLOYMENT DISCRIMINATION COMPLAINT**

1.    This employment discrimination lawsuit is based on (check only those that apply):

____    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et
        seq.*, for employment discrimination on the basis of race, color, religion, gender,
        or national origin.
        **NOTE**: *In order to bring suit in federal district court under Title VII, you must
        first obtain a right-to-sue letter from the Equal Employment Opportunity
        Commission.*

____    Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621,
        *et seq.*, for employment discrimination on the basis of age (age 40 or older).
        **NOTE**: *In order to bring suit in federal district court under the Age
        Discrimination in Employment Act, you must first file charges with the Equal
        Employment Opportunity Commission.*

____    American with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101, *et seq.*,

1

for employment discrimination on the basis of disability.
**NOTE**: *In order to bring suit in federal district court under the American with Disabilities Act, you must first obtain a right-to-sue letter from the Equal Employment Opportunity Commission.*

X    Other (Describe)
Civil Rights Act of 1866  42 U.S.C. § 1981 : US Code - Section 1981: Equal rights under the law.

2.   If you are claiming that the discriminatory conduct occurred at a different location than the address provided for Defendant, please provide the following information:

2050 West 11th St   Wichita    KS    67203-3006
(Street Address) (City/County) (State) (Zip Code)

3.   When did the discrimination occur?  Please give the date or time period:
5/15/2009-5/21/2010

## ADMINISTRATIVE PROCEDURES

4.   Did you file a charge of discrimination against Defendant(s) with the Kansas State Division of Human Rights or the Kansas State Commission on Human Rights?
   X  Yes    Date filed: 8/19/2010
_____ No

5.   Did you file a charge of discrimination against Defendant(s) with the Equal Employment Opportunity Commission or other federal agency?
   X  Yes    Date filed: 8/19/2010
_____No

6.   Have you received a Notice of Right-to-Sue Letter?
   X  Yes _____ No
If yes, please attach a copy of the letter to this complaint.

7.   If you are claiming *age discrimination*, check one of the following:
_____ 60 days or more have passed since I filed my charge of age discrimination with the Equal Employment Opportunity Commission.
_____ fewer than 60 days have passed since I filed my charge of age discrimination with the Equal Employment Opportunity Commission.

2

## NATURE OF THE CASE

8.    The conduct complained of in this lawsuit involves (check only those that apply):

    \_\_\_\_ failure to hire me

    \_\_\_\_ termination of my employment

    \_\_\_\_ failure to promote me

    \_\_\_\_ failure to accommodate my disability

    \_\_\_\_ terms and conditions of my employment differ from those of similar employees

    \_X\_ retaliation

    \_X\_ harassment

    \_\_\_\_ reduction in wages

    \_\_\_\_ other conduct (specify):

    Did you complain about this same conduct in your charge of discrimination?

    \_X\_ Yes     \_\_\_\_ No

9.    I believe that I was discriminated against because of (check all that apply):

    \_X\_ my race or color, which is \_Black\_\_\_\_\_

    \_\_\_\_ my religion, which is _____

    \_\_\_\_ my national origin, which is _____

    \_\_\_\_ my gender, which is _____male; _____female

    \_\_\_\_ my disability or perceived disability, which is _____

    \_\_\_\_ my age (my birth date is: _____)

    \_\_\_\_ other: _____

    Did you state the same reason(s) in your charge of discrimination?

    \_X\_ Yes     \_\_\_\_ No

10.   State here, as briefly and clearly as possible, the essential facts of your claim.  Describe specifically the conduct that you believe is discriminatory and describe how each defendant is involved in the conduct.  Take time to organize your statement; you may use numbered paragraphs if you find it helpful.  It is not necessary to make legal arguments, or to cite cases or statutes.

Carroll Lewis (Black) (medium skin tone, brown eyes, black hair, 6'1) began employment at Camelot for Kids (Sequel) as a Teacher Counselor on September 30, 2008. The staff mostly comprised of blacks males would often violate policy and use derogatory language while talking amongst themselves at the work place. Examples of actual statements include but are not limited to "This is our facility we don't want no crackers in here telling us what to do." "Black power." "Mexicans are lazy" "Brian (a white staff) is a skin head" On the rare occasion a white staff member was hired, black staff members would make comments among themselves

(continue on page 4)

3

## ESSENTIAL FACTS (continued)

such as "We gonna run their white ass out of here before they get promoted to supervisor." "Those rednecks are so corny they play rugby." The racial banter was prevalent and well tolerated among black staff. Mr. Lewis at no time participated in the bias speech. On March 29, 2009 Mr. Lewis was promoted to Senior Counselor. Once promoted to Senior Counselor Mr. Lewis began enforcing polices and procedures in an attempt to reduce the hostility and create a safe bias free therapeutic environment with equality for both students and staff alike regardless of race, color, religion, national origin, sex or any other forms of discrimination that my have arisen. The black staff in violation of discriminatory laws began viewing Mr. Lewis' attempts to follow federal guidelines as a censoring of their speech and beliefs. The black staff members labeled Mr. Lewis as a sellout. The black staff members began to reject Mr. Lewis' directives. On one occasion Mr. Lewis ask staff members to stay and clean the unit, one staff member standing out of the sight of Mr. Lewis stated "Who does this nigger think he is?" Following this incident the occurrence of staff members using ethnic slurs and derogatory terms (Nigger/nigga, Big Black Rambo, Sell out: a modern reference to Uncle Tom) towards Mr. Lewis commenced. On a different occasion a light skinned black staff member (Mr. Durgan) when asked to return home to change his inappropriate shirt, (shirt read Fuck Rules!) stated "Nigga just cause you was in the Airforce don't mean shit you can get knocked out like anybody else." A light skinned black staff member (Mr. Irvin) would refer to Mr. Lewis as Black Rambo (a racist epithet). Mr. Lewis made reports to his Team Leader and direct supervisor Mr. Dwayne Littleton. (Black) In verbal reports Mr. Lewis notified Mr. Littleton the black staff members were discriminating against him. Mr. Littleton laughed at one such report and stated "stop aproaching the staff like you white." When no action was taken Mr. Lewis followed Camelots open door polices of reporting and notified the Group Living Director Mr. Ngeli Kilangwa (African). During one attempt to complain Mr. Ngeli Kilangwa stated to Mr. Lewis "Mr. Littleton is a hot potato just leave it alone that's a fight you can't win." There was no corrective action and Mr. Lewis received no written or verbal response in regards to his complaints. After moving the issue up the proper chain of command Mr. Lewis was targeted and fell victim to harassment carried out by Mr. Littleton. Mr. Littleton made the comment to Mr. Lewis "I always get my way, I can do whatever I want I'm married to the Boss Lady." His use of boss lady was in reference to his wife Executive Director Heather Littleton (Heather Sell)(White), the principal policymaker within the facility. Mr. Littleton stated directly to Mr. Lewis while passing in the hallway I'm the Nic."(Nigger in charge) around here. Mr. Littleton transfered from a first shift Team Leader to the Third shift Senior Counselor. During this period Mr. Littleton would report to the facility during unscheduled hours to reassert and abuse his power and position arising from his relationship with Mrs. Littleton in a discriminatory fashion. In January 2010 a student stated to Mr Littleton "You can't tell me what to do, Mr. Lewis runs this shift." in an angry response Mr. Littleton exclaimed "Fuck Mr. Lewis, I'm the Boss Nigger around here." while pointing at the student and a staff member Mr. Koffi Oppong. (African) (witness) Mr Lewis following Camelot's open door policies met with Mr. Littleton's supervisor Group Living Director, Mr. Ngeli Kilangwa and the HR department Manager Leesa Beam (White) on multiple occasions to report the harassing behavior and request that it be stopped no corrective action was taken. Ten total verbal reports in all were given, two to Mr. Littleton, three to Leesa Beam and five to Mr. Ngeli Kilangwa. In one such reporting, Mr. Ngeli Kilangwa in the presence of Team Leader Mrs Linda Todd (Black) (witness) laughed at Mr. Lewis' discrimination complaints. When Mr. Lewis attempted to enforce the anti-discrimination, harassment, and professional standards policies in the form of disciplinary actions via the HR manager the actions were edited by Leesa Beam and issued as petty infractions or dependent on the staff not issued at all. In lieu of this lack of institutional support the harassment intensified. To deter Mr. Lewis from calling the corporate hotline to report the harassment that was taking place Mr. Littleton use intimidation tactics.

4

## ESSENTIAL FACTS (continued)

After terminating a staff member Mr. Little at a time when all students and staff had exited the unit walked through the upstairs hallway into Mr. Lewis' office clapping his hands and stumping his feet while stating "Somebody called the hotline on me guess who it was? Let me give you a hint he used to work here." Due to the obvious breach in confidentiality and fear of greater retaliation Mr. Lewis opted not to dial the corporate hotline. In February 2010 Mr. Lewis requested that staff member Mr. Sal Jones (Black) a friend to Mr. Littleton follow company policy and not bring tobacco onto the unit living area. In retort to Mr. Lewis' lawful and reasonable request Mr. Jones delivered a racially motivated death threat to Mr. Lewis by stating "Nigger who do you think you are? I'll take you in the parking lot and shoot you like a possum. Mr. Lewis reported this threat to his acting supervisor Mr. Michael Erwin (White) no action was taken. (Mr. Koffi Oppong witness) Mr. Michael Erwin shortly there after began to racially slander Mr. Lewis by referring to him as the big black militant both directly and indirectly on several occasions. Mr. Lewis was not and has never been actively or inactively a member to or in association with a black militant organization. In February 2010 shortly before the start of a group living meeting Mr. Littleton repeatedly passed a box of chicken under Mr. Lewis' nose and stated "I know you want to eat this chicken, I have never met a real black man who does not eat chicken." "Why you don't eat chicken?" "You are stupid." and he began to laugh along with two other black male staff that were involved in the harassment circle. Mr. Littleton followed by stating "If you not eating chicken then you must be doubling up on the watermelon." From prior conversations Mr. Littleton was fully aware that Mr. Lewis did not eat chicken due to a medical condition. On March 10, 2010 Mr. Lewis despite the constant bias remained focused on providing quality service to the children and staff which he served, through his undeniable hard work and dedication received a promotion to Team Leader. This decision was ultimately decided by the Executive Director, Mrs. Littleton wife of Mr. Littleton and the Group Living Director, Mr. Ngeli Kilangwa. Immediately following Mr. Lewis' promotion Mr. Littleton stated to Mr. Lewis in a tensed fashion " Boy don.t step on my toes". Following this statement Mr. Lewis received an increasingly excessive work load. Mr. Lewis began working 15 plus hour days (multiple wittiness) On many occasions Mr. Lewis would usher out third shift staff then great them for there next day work shift. A few staff members would state "Damn you're still here." Mr. Lewis repeatedly complained to his employers that he was overworked. When he sought relief from his supervisor Mr. Ngeli Kilangwa stated "You knew you would be salary when you took the job deal with it or resign." On May 16th 2010, during a second shift at approximately 6pm Mr. Lewis working within his job duties and essential functions in a good-faith effort to maintain a safe secure therapeutic environment intervened between two students that he knew to be very hateful and aggressive towards each other. An employee, Mr. Martin was present. Mr Lewis reasonably requested that Mr. Martin isolate the younger student away from the older student, so that a confrontation could be averted. Mr. Martin stated with malice No! I'm going to do this my way! The agitation of the students continued to escalate. In accordance with policy Mr. Lewis attempted to use concern verbals which are strong assertive vocal commands to de-escalate the situation between the students. The eighteen year old more violent and aggressive student charged towards the fourteen year old student. As an inexperienced staff (less than two months) Mr. Martin's back was turned to the students and he could not witness their sudden surge towards each other. Mr. Lewis having had experience with both of these students knew the level of danger for all involved and intervened to separate the students as they charged towards each other. In the melee of Mr. Lewis gaining control of the younger student Mr. Martin was inadvertently moved from the position he had been standing in.

5

## ESSENTIAL FACTS (continued)

On that night  May 16th 2010 Mr. Littleton a third shift supervisor usurped the second shift supervisors authority and coerced Mr. Martin into writing an exaggerated statement of events. Mr Martin was subsequently promoted to Senior Counselor. Mr. Littleton acquired the falsified document and used it as an opportunity to move forward with an adverse action upon Mr Lewis under the guise of poor approach and abuse. This action would ultimately lead to Mr Lewis' untimely resignation. To further cause loss of position, of dignity and of privileges entitled to Mr. Lewis, staff member Mr. Bronson Irving was allowed by Mr. Littleton to make and place a copy of the exaggerated statement written by Mr. Martin within the office mail box of every staff member employed within the facility. On May 17 at approximately 7:45 am Mr. Littleton called Mr. Lewis' cell phone in a mocking laughter. Mr. Littleton instructed Mr. Lewis to go into his office and check his desk to find a surprise. Once Mr. Lewis stated that he had recovered a document Mr. Littleton erupted in wild laugher and stated "Boy, I got you, that's a letter from a staff member that said you pushed him you have a good day" in a sarcastic manner. At approximately 8:05 am Mr. Lewis carried the claim of the staff member to the HR Office Manager Leasa Beam. Mr. Lewis notified her that the egregious allegations were a false, racist ploy to adversely affect him. Mrs Beam notified Mr. Lewis that she would schedule a meeting that day for 4:30 pm between Mr. Lewis and Mr. Martin, however upon the arrival of Mrs. Littleton to the facility this protocol changed. Mrs Beam while walking to her vehicle for a brake stated to Mr. Lewis "Hey forget about that meeting go meet with Mr. Kilangwa." On May 17 at approximately 11:45 am Mr. Lewis was suspended with pay this suspension was carried out by Mr Ngeli Kilangwa. On May 21, 2010 Mr. Lewis was instructed to select demotion and transference to a female unit or resignation. Mrs. Beam clearly stated "We know that the allegation is true you have two choices because you are still within your 90 day probation period and you put your hands on another staff we will demote you to Senior Counselor and place you on the girls unit so that you do not assault Mr. Martin again or you can resign." Camelot had not presented any corrective plans to eliminate the hostile environment but instead presented a stagnant culture of tolerating and concealing harassment that violated civil rights laws and a habitual pattern of retaliation against those victims that felt compelled to expose such harassment. Camelot was repeatedly made aware by Mr. Lewis of the discrimination perpetrated within the Camelot organization. Although aware Camelot refused to take corrective measures and failed to enforce its anti-harassment policy. Camelot failed to adequate train employees on federal guidelines and company policies dealing with work place harassment. The preponderation of harassment training consisted of merely placing out printed regulations on a conference room table along with a short test that usually included the answer key.(multiple wittiness) Employees sometimes would have others complete their test while they took smoke brakes these staff would return from smoking sign the test and turn it into HR to receive their paycheck. Most employees would complete the inadequate training within five minutes. Mr. Lewis complained to HR Office Manager Leasa Beam about this flaw in training, HR Office Manager Leasa Beam stated "I could care less if they receive training as long as we have a copy of their signed test." Mr. Lewis also brought the issue of training to the attention of Group Living Director, Mr. Ngeli Kilangwa who stated "Stay in your box, this is over your head." When group training sessions were held they were lead by in-house management (Ngeli Kilangwa, Leesa Beam, Percy Turner) who would simply give an informal warning on harassment such as "Sexual harassment, it's bad! do not, do not, do it." or "Sexual harassment is a big no! no!" They would then advise employees to read the company policy then move on.(multiple wittiness)

6

## ESSENTIAL FACTS (continued)

Camelots failure to adequately train and discipline staff lead to a denial of Mr. Lewis' enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship between he and Camelot by cultivating a hostile work environment. The plaintiff believes he was targeted by his supervisor Mr. Littleton not only because of his complaints of harassment but also because his skin tone, height, weight, facial features and hair more closely represented the stereotypical image of the Boss Nigger (6'2 210lbs). The plaintiff believes Mr. Littleton in an attempt to protect his position as Camelots Boss Nigger /NIC (Nigger in charge) targeted Mr. Lewis for termination. Further more the plaintiff believes that Mr. Littleton intentional used his political influence as a sustentation of hate within the facility to germinate an increasingly hostile, intimidating, racist environment to force Mr. Lewis out. Camelot for Kids violated the established work agreement and constructively discharged Mr. Lewis in retaliation to his complaints of racial abuse and his continued refusal to conform to the illegal culture. Camelot in an attempt to negate Mr. Lewis' claims of discriminatory abuse and to protect the policy maker and her intrest stigmatized Mr. Lewis as an abuser. The plaintiff feels that the discriminatory harassment circle within Camelot for Kids striped him of his personhood and reduced him to a caricature a mere object of amusement. Due to intentional discrimination and retaliation Mr. Lewis states a claim pursuant to 42 U.S.C. § 1981 : US Code - Section 1981: Equal rights under the law.

(Attach additional sheets as necessary).

11. The acts set forth in paragraph 10 of this complaint:
_____ are still being committed by Defendant.
_____ are no longer being committed by Defendant.
__X__ may still be being committed by Defendant.

12. Plaintiff:
_____still works for Defendant
__X__no longer works for Defendant or was not hired

13. If this is a ***disability-related claim***, did Defendant deny a request for a reasonable accommodation?
_____Yes _____ No
Explain: ___________________________________________

## REQUEST FOR RELIEF

As relief from the allegations of discrimination as stated above, Plaintiff prays that the court grant the following relief to Plaintiff: (check any and all that apply)

______Defendant be directed to employ Plaintiff
______Defendant be directed to re-employ Plaintiff
______Defendant be directed to promote Plaintiff
__X__Defendant be directed to adequately train/discipline staff eliminate discriminatory practices
______Injunctive relief (please explain): ______________________
__X__Monetary damages (please explain): 70,000.00 Compensatory 3,000,000.00 Punitive
__X__Costs and fees involved in litigating this case
__X__As additional relief to make Plaintiff whole, Plaintiff seeks: 54,000.00 Back Pay

and such other relief as may be appropriate, including attorney's fees, if applicable.

Signed this 21 day of September, 2011.

Signature of Plaintiff
Carroll W. Lewis Jr.
Name (Print or Type)
P.O. Box 782963
Address
Wichita, KS 67278
City State Zip Code
316-409-9237

Telephone Number

## **DESIGNATION OF PLACE OF TRIAL**

Plaintiff designates ( Wichita, Kansas City or Topeka ), Kansas as the location for the trial in this matter.                                       (circle one location)

Signature of Plaintiff

## **REQUEST FOR TRIAL BY JURY**

Plaintiff requests trial by jury ( yes or no ).
(circle one)

Signature of Plaintiff

Dated: 9/21/2011
(Rev. 8/07)

9

Additional Information